FRANKLIN v. STATE.

(Division B. June 5, 1933.)

[148 So. 180. No. 30647.]

F. K. Ethridge, of Meridian, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

Wes Franklin was indicted, with George Gilbert, Ed Mitchell, and Tommie Rodgers, for the burglary of a storehouse in Meridian Mississippi, belonging to S. H. Wagner, the indictment, omitting the formal parts, charging that: "George Gilbert, Ed Mitchell, Wes Franklin and Tommie Rodgers, in said county, on the ———— day of ————, A. D. 1932, in the storehouse of S. H. Wagner then and there being in which were stored and kept articles of value for use and for sale, to-wit: lard, sugar, canned goods, and other articles of value, did unlawfully, feloniously and wilfully break and enter by bursting and forcing open an outer window with the unlawful, felonious, and wilful intent the said goods and chattels of the said S. H. Wagner then and there being to unlawfully and feloniously take, steal, and carry away, contrary to the form of the statute," etc.

The indictment was demurred to on the ground that it charged no crime; was fatally defective; failed to charge that defendant did break and enter the storehouse of S. H. Wagner, charging that defendant, "being in the storehouse," failed to put the defendant on notice of the crime charged against him, and was so inartfully drawn, with its various phrases so transposed, that it failed utterly to charge an offense. This demurrer was overruled. It is also alleged that the proof was insufficient to sustain the conviction.

The defendants George Gilbert, Ed Mitchell, and Tommie Rodgers pleaded guilty and testified for the state, against Franklin, to the effect that on the night preceding the burglary they attended a dance, and after the dance, they all met together and agreed that Franklin was to watch the storehouse while the others entered and brought out goods; that they were to bring out goods for Franklin; that one of the defendants, on the night of the

burglary, took an auger, bored a hole in a window, and released the fastening thereof, but as this window had an iron bar across it, and the opening was not large enough for the others, the man who entered through the window then opened the door; that they went in and took out goods and carried them to a nearby vacant house, returned and entered the store again to secure goods for Franklin when they were captured by a policeman. They said they did not then see Franklin, nor did they see him when they took the first goods to the vacant house but that it had been agreed that he was to watch at the intersection of certain streets where a bridge had been built over a ditch.

For the defendant (Franklin) it was shown that, after the arrest, the other defendants stated to certain persons that because Franklin ran off they were going to "frame" him and put him into it. There was also testimony that Franklin had nothing to do with the robbery.

The witnesses, however, testified that it was in the agreement, as stated above, and was fully understood that all would participate in the proceedings, and that Franklin was to watch on the outside.

Franklin, himself, testified that he had nothing to do with it; that the others approached him about the matter and he declined to go into it. He admitted being at the dance, but claimed that he took a girl home, and then started to his own home; that as he was on his way home he saw the other defendants, but did not stop or take any part in the robbery.

One of the witnesses, Kendall Hopper, a policeman who testified for the defendant, was asked by the district attorney if he did not state to the district attorney that he knew nothing about it and did not know what he was summoned for. In the course of his argument, the district attorney, referring to this testimony of the policeman, said, "I look that man in the eyes and ask him what you know about this case, and he stated 'I don't know anything about this case, I don't know a thing in the

world about this case,' and he didn't," which remarks were objected to. When this policeman, Hopper, was on cross-examination, the district attorney asked him as follows:

"Q. I talked to you about this? A. Yes, sir.

"Q. You said you were summoned up here by the other crowd? A. Yes, sir.

"Q. And you said, 'Mr. Dunn, I don't know a thing about it,—don't know why they summoned me'—that is what you told me? A. Yes, sir, but they told—

"Q. (Interposing) Didn't you tell me that, just answer the question yes or no. A. Yes, sir.

"Q. Stand aside."

We think that on the whole the indictment is poorly drawn and is inartful, but that it charges a substantial offense. Looking at the indictment as a whole, we think it is manifest that it charges that the parties broke into a store and does charge that such breaking was unlawful and felonious with the intent to steal certain goods and chattels contained in said storehouse belonging to S. H. Wagner.

We also think the evidence is sufficient to sustain the conviction. It is true there is some discrepancy in the testimony of the state's witnesses, but it is not of such nature as to destroy the testimony so as to prevent the jury from believing the essential facts testified to, and which essential facts are supported by each of said witnesses participating in the burglary.

The comment of the district attorney is objected to, and it is contended that the defendant had a right to be confronted by the witnesses and to cross-examine them, and that said defendant had no chance to cross-examine the district attorney. We think the comment was pertinent on the cross-examination of the witness Hopper. The defendant did not develop the conversation with the district attorney and said witness so as to bring out any other matter contained in the conversation at the time.

We find no error that would warrant a reversal of this case and the judgment will be affirmed.
Affirmed.