Morrissey *v.* Vollor, et al.

No. 39448        February 7, 1955        77 So. 2d 723

*Will S. Wells,* Jackson, for appellant.

*Dent, Ward & Martin,* Vicksburg, for appellees.

McGehee, C. J.

The appellees, W. J. Vollor, Landman Teller and James P. Biedenharn, members of the former law firm of Vollor, Teller and Biedenharn at Vicksburg, Mississippi, filed this suit on December 3, 1953, to recover of the appellant, Michael T. Morrissey also of Vicksburg, an alleged balance of $10,500 on a fee of $22,500 for legal services rendered in connection with the compromise and settlement of the claim of the United States of America for delinquent income taxes, which finally aggregated the sum of $267,278, beginning in 1942 and covering a period of six or more years.

After much negotiations in conferences with Federal tax authorities, correspondence, pleadings, etc., a judgment was rendered by a Federal tax court at Little Rock, Arkansas, in November 1949 for approximately $128,000 against the taxpayer, Michael T. Morrissey.

Thereafter, a further offer of compromise and settlement, supported by financial statements and revised financial statements of the taxpayer was made in the

sum of $15,000. This offer of compromise was rejected. Thereupon, further negotiations were had, financial statements and revised financial statements were rendered by the taxpayer, and with the final result that the taxpayer was allowed to settle the claim in the late spring of 1952 for the sum of $22,000.

The employment of the attorneys to represent the taxpayer required the rendition of services over a period of several years, and a great deal of the time of Mr. Vollor was required as the member of the law firm in particular who was looking after the interests of the taxpayer in the handling of this claim, covering the years during which the taxes were alleged to have accrued, and until the final settlement of the claim. He attended conferences in Washington, D. C.; New Orleans, Louisiana; and appeared in the tax court at Little Rock, Arkansas, accompanied by Mr. Teller, who was then a member of the firm of Vollor and Teller. The junior member of the firm conferred with Mr. Vollor and likewise rendered legal services in connection with the claim other than his attendance at the tax court at Little Rock, Arkansas.

The claim involved many complications in regard to whether or not the taxpayer was the sole owner of certain businesses and was liable to pay taxes on the entire taxable income derived therefrom. The controversy involved threats of criminal prosecution of the taxpayer in regard to representations allegedly made as to whether he had received the total income from one of the businesses in particular, the Delta Distributing Company, or whether he had merely received a salary for his services as the promotional operator thereof as an employee of Mr. Steve Castleman, the reputed owner of the said business operation. It involved an authorization from Castleman to the taxpayer that the latter should deduct from the income certain amounts as his salary due by the reputed owner or whether he was due to pay taxes

on the entire taxable income derived from the said business as the real owner. It further involved a repudiation by Castleman of his previous assumed ownership of this particular business enterprise.

This alleged repudiation occurred a few days before Mr. Vollor was to appear at Little Rock, Arkansas, before the tax court and which, in November 1949, rendered a judgment against the taxpayer, Michael T. Morrissey, in the approximate sum of $128,000, and which repudiation resulted in Mr. Vollor having his law partner Mr. Teller accompany him to Little Rock, Arkansas, in order that he might confer with his said partner in regard to the grave emergency which had arisen, on the occasion above mentioned.

It is claimed by the appellees that the Federal tax officials were at times uncooperative, and changed the time and place for scheduled conferences at their will and pleasure, since they were claiming that they had enough evidence to sustain criminal prosecutions against the said taxpayer. In other words, the handling of the claim involved the necessity of making important decisions to protect their client against a claimed civil liability as well as his alleged criminal liabilty. In this respect the responsibility of the attorneys were much greater than that involved on the part of Mr. Sutton as attorney in defending the claim of the United States against Barnett in the case of Barnett v. Sutton,............... Miss.............., 76 So. 2d 263, wherein a jury awarded to Mr. Sutton a judgment for a fee of $5,000 in his suit against Barnett for a much larger sum, and where judgment for the full amount could not have been reversed by this Court as being grossly excessive.

The appellant relies primarily upon an entry in his account on the books of the law firm made on August 31, 1950, of the sum of $5,000, designated on the books of the firm as a ''Final Fee'' in the case of Morrissey v. Commissioner of Internal Revenue. This entry was

made by the bookkeeper in the law office of the appellees, and according to the testimony of both Mr. Vollor and Mr. Teller, which the chancellor evidently found to be true upon the conflict between their testimony and the position taken by the appellant Morrissey, was an erroneous entry, of which the said attorneys were not actually advised until the same was called to their attention by Mr. Morrissey in a conference at the attorneys' office in December 1952. The testimony of the appellant was such as to warrant the chancellor in finding that both Mr. Vollor and Mr. Teller were surprised to learn that such entry had been made on their books. Their client had been rendered a bill for a balance due of $10,500 several weeks prior to this conference at the attorneys' office, and had made no response to their claim of this balance due until he went to their office in December 1952, as aforesaid.

According to the testimony of Mr. Vollor and Mr. Teller, their client discovered this erroneous entry when Mr. Vollor let the appellant examine his account on the law firm's books to see what sums he had been credited with and in what cases. It is shown by the testimony of these two attorneys that when he came to the office, after having received statements of the balance of $10,500 alleged to be due for the handling on this tax case, Mr. Morrissey proposed that they fix the fee in an amount that he was able to pay; that a discussion arose in regard to the amount and it appears from the testimony of the client on the trial of this cause before the chancellor, the jurisdiction of equity having been invoked for the purpose of having cancelled and set aside a conveyance of real estate by the client to his wife, that he told the attorneys that he did not understand the bill for $10,500, and that he did not owe them "Any $10,500." And it further appears from the testimony that when Mr. Vollor insisted that he did owe this balance, and was unwilling to reduce the amount, the client said

to him "Bill, don't get your tail over the dashboard," and that the client then called attention to the entry of August 31, 1950, on the books of the law firm which read "To fee U. S. v. Morrissey — v. Com. of Int. Rev. final fee, $5,000;" that Mr. Vollor looked at the entry and said "It sure is," that the witness, Mr. Morrissey, then walked into Mr. Teller's office and showed him the entry and that Mr. Teller said "Well, I'll be d . . ."

In support of the action of the chancellor in resolving the conflict in the evidence as to whether or not the client owed the attorneys a further fee, it is shown by the record that on February 12, 1948, more than four years before the claim was finally compromised and settled at $22,000, Mr. Vollor wrote a letter to Mr. Morrissey in which he stated, among other things, the following:

"Dear Mike:

"We acknowledge with thanks your remittance of $1,000.00 as a payment on our fee in the above entitled matter.

"In order that our fee arrangements may be definite and handled in a businesslike manner, I wish to confirm our oral understanding concerning our fee. It is our understanding that we are to receive $5,000.00 as a retainer, payable in five monthly installments of $1,000.00 each, the first monthly installment due on February 1st, 1948 (the payment acknowledged hereinabove) and a like payment on the 1st day of each month thereafter until the sum of $5,000.00 has been paid. Further payments will be determined at the end of each six months period during the time the matter is in a pending status and a final payment to be determined upon at the termination of the case. We will endeavor to fix further payments on a basis that will be reasonable and commensurate with the services rendered, taking into consideration the benefits which are achieved."

Before introducing a copy of this letter from the files of the attorneys, the record shows that Mr. Ward, of the law firm of Dent, Ward and Martin, who represented the attorneys in the trial of the instant case, called upon the attorney for the defendant for the original of the letter, and received a response ''we don't have it.'' Thereupon, the copy was introduced without objection, and it is not shown by the record that Mr. Morrissey did not receive the original, or that he ever questioned what was said by Mr. Vollor as to his understanding of the fee arrangements, until he discovered at the conference in their office in December 1952 that the bookkeeper of the attorneys had made the entry of the $5,000 as a ''Final Fee'' on August 31, 1950. Both of the said attorneys testified, as aforesaid, that they had never seen this erroneous entry on the books until it was called to their attention in December 1952 by their client, after they had permitted him to examine his account on their books.

Moreover, the entry of August 31, 1950, of the $5,000 as a ''Final Fee'' is wholly inconsistent with what we have quoted from the letter from Mr. Vollor to Mr. Morrissey of February 12, 1948.

After the letter of February 12, 1948, had been written, the client did not meet any of the $1,000 monthly payments mentioned therein, as and when the same became due, but thereafter a statement was prepared of a balance due of $2,811.49, covering charges for fees in other matters and expenses incurred by Mr. Vollor in the handling of the tax claim, and including the amount due on the retainer fee mentioned in the letter, and in the total sum of $7,129.50, and which the attorneys testified was intended to represent only the balance due as of the date of the corrected statement. A note and deed of trust was executed for this balance of $7,129.50, and the amount was later paid by the client. If it was paid by check, the same was not introduced by the defendant to

show a notation thereon, if any, that the same was an accord and satisfaction as relied upon as a defense in this case.

Finally, the attorneys contend that they were unable to get their client to talk with them about the further compensation in the tax case that they were to receive according to their understanding as stated in their letter of February 12, 1948, and that during the latter part of the year 1952, after the tax claim had been settled for $22,000, the members of the firm considered and discussed the services rendered in the handling of the tax claim and agreed among themselves that a fee of $22,500 should be charged as the total fee for the handling of the tax claim; that prior to the filing of this suit the client had paid a total of $12,000 on the said amount and did owe the balance sued for in the amount of $10,500.

Mr. Vollor testified at great length before the chancellor in identifying petitions, correspondence, about conferences and when and where held, about submitting authorities to sustain the contention of the taxpayer, about advising the accountant as to the status of certain properties and various transactions, for the information of the accountant in preparing a correct financial statement in support of the offer of compromise, etc.

During the pendency of the tax claim a suit was prepared and filed by the attorneys against the Collector of Internal Revenue at Jackson, and it is claimed that this suit served to deprive other taxing authorities of jurisdiction of the tax claim during the pendency of that suit. At any rate, it would appear that the services of these attorneys resulted in the delay of threatened criminal prosecutions until they had evidently become barred by the statute of limitations. Mr. Vollor's testimony covers pages eighty-four to four hundred and forty-one of the record in relating the services rendered over the long period of the employment of the attorneys, and in

identifying pleadings, correspondence, etc. and in testifying in support of the claim sued on.

The sole issue presented to us for decision is whether or not the chancellor was manifestly wrong in resolving the conflict in the testimony in favor of the complainants, who are the appellees here. We are unable to hold that he was manifestly wrong in either holding that the defendant owned the complainants a further fee or in his decision that the amount of the fee charged was reasonable. 7 C. J. S., Section 190; Brandon v. Zerkowsky, 167 Miss. 195, 148 So. 797; and Barnett v. Sutton, supra, decided by this Court on December 13, 1954, hereinbefore discussed and cited by the appellees; or under the authorities cited by the appellant of Ingersoll v. Morse, 33 Miss. 667; Dent v. Jones, et al., 50 Miss. 268.

The decree appealed from, finding that the balance of $10,500 is still due the appellees on their fee, and in declining to set aside the deed from Michael T. Morrissey to Elizabeth M. Morrissey, dated July 30, 1952, as not constituting a voidable transfer of property under the finding of the court that the defendant was not insolvent at the time of the execution of the said conveyance, and in dismissing the bill of complaint to that extent, should be, and the same is, hereby affirmed.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie, JJ.,* concur.