493 So.2d 1288 (1986)
GILCHRIST MACHINERY COMPANY, INC. and United States Fidelity & Guaranty Company
v.
Frederick A. ROSS, Jr.
No. 56691.
Supreme Court of Mississippi.
September 3, 1986.
*1289 Barry H. Powell, Thomas, Price, Alston, Jones & Davis, A. Spencer Gilbert, III, Wise, Carter, Child & Caraway, Jackson, for appellant.
William Sebastian Moore, Stephen L. Beach, III, Beach, Luckett & Ross, Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
When lawyer and client throw litigational prudence to the wind and go after the pot of gold and the pot won largely turns out to be plate, the matter of attorneys fees and legal expenses often produces unseemly acrimony. Here a Jackson attorney claims that for a year he did practically nothing other than pursue a federal antitrust and unfair trade practices action in federal court, while the client claims the lawyer either did too much or has padded his bill.
The chancellor patiently listened and resolved most of the rather messy factual issues in favor of the attorney. With two exceptions, we affirm. The matter of unreimbursed legal expenses, however, was not decided and the case must be remanded for consideration of that point.

II.
Gilchrist Machinery Company, Inc., is in the heavy equipment business in the Jackson, Mississippi area. Robert A. Gilchrist is its president and chief operating officer. Gilchrist Machinery was one of the Defendants below and is one of the Appellants here.
Gilchrist Machinery was a retail franchisee for Komatsu American Corporation, a manufacturer of heavy equipment. In late 1983 or early 1984, Komatsu notified Gilchrist Machinery that its dealership was being terminated. Gilchrist Machinery brought an action in the United States District Court for the Southern District of Mississippi seeking injunctive relief and damages under the California Franchise Act and under the federal antitrust laws.
Gilchrist Machinery employed Frederick A. Ross, Jr., an attorney practicing in Jackson, to represent it in the Komatsu litigation. Ross was the Plaintiff below and is the Appellee here. Ross had done the legal work incident to forming the corporation, Gilchrist Machinery, and had represented the company in connection with numerous matters for some seven or eight years. Fred Ross and Bob Gilchrist appear to have been good friends during this time. To assist him in the Komatsu litigation, Ross associated James A. Becker, an attorney with the Watkins & Eager law firm in Jackson, and an out-of-state attorney named James R. Amschler, of Cincinnati, Ohio.
After an extended period of discovery, including a large number of depositions and a number of days inspecting documents, a preliminary injunction hearing was held in U.S. District Court in December, 1984. The District Court ruled against Gilchrist Machinery, denying its motion for preliminary injunction. See Gilchrist Machinery Company, Inc. v. Komatsu America Corp., 601 F. Supp. 1192 (S.D.Miss. 1984). After that, settlement negotiations were commenced, culminating in a settlement of the suit in early February, 1985.
During the course of litigation, Ross rendered monthly bills to Gilchrist Machinery, which remitted partial payments from time to time.
For work done during the months of January, February, March, April and May, 1984, Ross charged Gilchrist $70 per hour for out-of-court work and $90 per hour for *1290 depositions and in-court work. This is the same rate which Ross had been charging Gilchrist Machinery for work on other cases. On his bills for work done after June 1, 1984, Ross started charging at a straight hourly rate of $90 for all work.
Fred H. Krutz, III, a Jackson attorney, who represented Komatsu in the federal litigation, said that he spent 200 hours a month on the case for a period of five months. Krutz dealt with both Ross and Becker, although most of his dealings were with Becker. He said that in his opinion $90.00 per hour would be a reasonable fee for Ross to have charged for his services in the case.
Becker explained that he was called in on the Komatsu case by Ross in late January or early February, 1984. Becker billed Gilchrist at the agreed rate of $100.00 per hour. He stated that Ross had prepared the pleadings before he got into the case. Becker said that he and Ross worked on the case for almost a year and that the Komatsu case was one of the hardest cases he had ever seen and that he and Ross worked hard and sometimes worked after hours.
At the conclusion of the Komatsu litigation Gilchrist had paid to Ross in excess of $117,000 on Ross' attorneys fees and expenses. Ross asserted a claim, based on his billings, for a balance due of an additional $82,460.56. An agreement was reached whereby this sum was deposited in escrow pending the outcome of the present fee litigation. Subsequently, the funds deposited in escrow were released to Gilchrist Machinery upon its posting of a bond with United States Fidelity & Guaranty Company as surety. USF & G is a nominal Defendant/Appellant.
On February 13, 1985, Ross commenced this civil action by filing his complaint in the Chancery Court of the First Judicial District of Hinds County. At trial, Gilchrist Machinery charged numerous discrepancies in Ross' billings. The Chancellor disallowed eleven eight-hour days of depositions billed by Ross, days upon which the Chancellor found no depositions were taken. The Chancellor also found that Ross had endorsed a $3,000 Komatsu sanctions check and deposited it in his own account without giving Gilchrist Machinery credit. The Chancellor, however, rejected most of the other objections of Gilchrist Machinery to Ross' bills and entered judgment in favor of Ross in the principal amount of $71,309.56. From that judgment, Gilchrist Machinery has prosecuted this appeal.

III.
Gilchrist first argues that Ross' invoices were not admissible in evidence because copies of same had not been attached to the complaint. Gilchrist alternatively invokes the provisions of Miss. Code Ann. § 11-7-45 (1972) and Rule 10(d), Miss.R.Civ.P., and argues that documents sued upon must be attached to the complaint, failing which a party may not offer same in evidence.
As a part of his direct testimony, Ross offered as exhibits a series of invoices addressed to Robert A. Gilchrist, Gilchrist Machinery Company, Inc., Jackson, Mississippi, beginning February 2, 1984, through and including January 31, 1985, the latter of which invoices reflected a balance then due of $82,460.56. Gilchrist objected to the introduction of these statements, citing Section 11-7-45 and Rule 10(d). The Chancellor overruled the objection and the statements were marked and received as Collective Exhibit 1.
A preliminary matter need be disposed of. Much jurisprudence has evolved regarding Section 11-7-45, a century old statute requiring that writings sued upon be attached to the plaintiff's pleading. That statute has been relegated to the historical junkheap, and the matter with which we are concerned today is governed by Rule 10(d), Miss.R.Civ.P. which provides:
(d) Copy must be attached. When any claim or defense is founded on an account or other written instrument, a copy thereof must be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.
*1291 Appendix B to the Mississippi Rules of Civil Procedure provides:
To the extent that the statutes listed in this appendix prescribe rules of practice and procedure, such statutory rules shall be supplanted by the provisions of the Mississippi Rules of Civil Procedure, which shall govern any civil action authorized or contemplated thereby.
Included among Appendix B's supplantees is Section 11-7-45 with the indication that its place has been taken by Rule 10(d).
The complaint filed by Ross on February 13, 1985, has attached thereto three exhibits: the escrow agreement wherein the disputed attorneys fees were held by an escrow agent, a debit memo from First National Bank of Jackson showing deposit of the escrow funds in that bank, together with a contract (not relevant here) for legal services between Gilchrist Machinery and Ross entitled "Contract For Legal Services On Contingent Fee Basis", dated September 7, 1984. The invoices are not attached, nor does the complaint contain any explanation why not.
We think it rather clear that Ross presented a "claim ... founded on an account" within Rule 10(d). Cf. Columbus & Greenville Railway Co. v. Mississippi Clinic, 153 Miss. 29, 38, 120 So. 203, 205 (1929); Wolff v. Hopkins 145 Miss. 827, 831, 111 So. 290 (1927). The heart of Ross' action is his claim that, pursuant to an oral agreement, he rendered good and valuable professional services to Gilchrist Machinery, that he has billed Gilchrist for attorneys fees and reimbursable legal expenses in accordance with that agreement, and that his bills have not been paid. At trial Ross' counsel conceded that the billing relationship between Gilchrist and Ross' law firm was "an open account". Ross argues that his action is predicated upon the escrow agreement, but this cannot be so, for the escrow agreement confers no rights in favor of Ross of present relevance not derivative from such rights as he may hold under the oral contract/open account.
That the claim falls within Rule 10(d), however, does not mean that Gilchrist prevails. By virtue of Gilchrist's failure seasonably to invoke its Rule 10(d) rights, we find those lost.
Gilchrist presented no motion challenging the complaint on Rule 10(d) grounds. Gilchrist's answer filed February 22, 1985, makes no objection to the fact that the account invoices are not attached, though the nature of the suit as one within Rule 10(d) was surely apparent. This is so even though paragraph 8 of the complaint alleges that Ross "remitted monthly statements of hourly charges to Defendant Gilchrist for services rendered ... and that the balance due for said legal services rendered is $82,460.66." On April 30, 1985, Gilchrist filed an amendment to its answer. Again no mention of the failure to attach the exhibits was made. Insofar as the record reflects, the first objection Gilchrist made was when the exhibits were offered at the May 6, 1985 hearing.
It will be recalled that the supplanted statute, Section 11-7-45, provided that, if the exhibit was not "annexed to or filed with the declaration, ... evidence thereof shall not be given on the trial... ." Neither the documents nor evidence thereof was admissible where same had not been attached. Columbus & Greenville Railway Company v. Mississippi Clinic, 153 Miss. 29, 38, 120 So. 203, 205 (1929); Wolff v. Hopkins, 145 Miss. 827, 831, 111 So. 290 (1927); Lawson v. Dean, 144 Miss. 309, 313, 109 So. 801, 802 (1926). Indeed, a declaration covered by the statute which did not have the writing exhibited was demurrable. Palmetto Fire Insurance Co. v. Allen, 141 Miss. 681, 690-91, 105 So. 769 (1925). The draftsmen of Rule 10(d) may be presumed familiar with all of this.
We are afforded little guidance regarding the construction of Rule 10(d).[1] The *1292 official comment merely states it is to continue the practice of "annexing to pleadings copies of written documents upon which the claim or defense is founded." Section 11-7-45 was well understood as an exclusionary rule. The language thereof prohibiting the offering of evidence was known to all. We regard it as significant that Rule 10(d) contains no exclusionary language. Indeed, Rule 10(d) makes no provision what shall be done in the event of a violation.
While Rule 10(d) must obviously be given effect according to its tenor, such may be done by providing that a defendant must timely assert the rule else any claim founded thereon will be deemed waived.[2] Where a party perceives that his adversary has failed to conform to Rule 10(d), he may file a proper motion reasonably in advance of trial seeking compliance with the rule, failing which compliance he may be entitled to dismissal of the complaint without prejudice. Any other construction would render the rule's primary function as a trap for the unwary. Where, as here, the fact of the statements was alleged and where it is obvious that there was no surprise to Gilchrist,[3] it would be wholly inconsistent with the spirit and purpose of our rules to treat Rule 10(d) as an exclusionary rule. In view of the liberal provisions for discovery found in Rule 26-37, Miss.R.Civ.P. the attachment of exhibits to pleading is hardly as important as in former days. See Bryant, Inc. v. Walters, 493 So.2d 933, 938 (Miss. 1986); Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 505 (Miss. 1985).
In the end, while it appears that Ross' complaint may not have complied with Rule 10(d) in that, without explanation or justification, the invoices are not attached, Gilchrist's failure to assert the violation by proper motion or otherwise reasonably in advance of trial shall operate as a waiver of its rights under the rule. The assignment of error is denied.

IV.
No extensive articulation of premise or citation of authority is necessary to remind these Appellants that where, as here, they challenge on appeal findings essentially factual in nature our scope of review is quite limited. We do not consider the evidence de novo but rather apply the familiar substantial evidence/manifest error test. Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Smith v. Todd, 464 So.2d 1155, 1157 (Miss. 1985); Richardson v. Riley, 355 So.2d 667, 668-69 (Miss. 1978); Morrissey v. Vollor, 223 Miss. 16, 24, 77 So.2d 723, 726 (1955). This is so whether the finding be one of evidentiary fact or of ultimate fact. Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). Beyond this, with respect to issues of fact where the trial judge made no specific finding, we indulge in the assumption that the trial judge resolved such issues in favor of the appellee  at least within reason. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985); Harris v. Bailey Avenue Park, 202 Miss. 776, 791, 32 So.2d 689, 694 (1947).
These principles, as embedded as they are in our appellate jurisprudence, do not require of us an attitude that whatever the chancellor says goes. Where the chancellor is manifestly wrong or where there is no credible evidence in support of his findings, it is our duty to reverse. Where, as here, there are numerous factual issues we necessarily must look at each and treat each according to accepted principles regarding our scope of review. Where, with respect to one or more items, the evidence seems largely uncontradicted and in favor of the appellant, we will ordinarily reverse. The fact of an overall judgment for the *1293 appellee does not entitle that party to an inferred finding unless there be credible evidence sufficient to undergird such a finding had one been made.
Here Ross asserted a claim for unpaid attorneys fees and unreimbursed legal expenses in the amount of $82,460.56. The Chancellor excised certain items for which Ross had claimed fees and expenses and reduced the aggregate sum to $71,309.56 and entered judgment in favor of Ross for that amount. No cross-appeal has been taken so we may accept as final these excisions.
Faithful to the limitations upon our scope of review noted above as well as to our responsibility where we find errors within that scope, there are two additional excisions that should be made.
First, the Chancellor deleted Ross' billings for ten days in April through July of 1984 because those billings appeared to be for depositions that were not taken. Inexplicably, the Chancellor failed to disallow billings for May 14 and June 22 on which dates Ross also billed for depositions which did not take place. Considering the uncontradicted evidence, a total of sixteen hours, of $1440.00, should be deleted for these two days and the judgment in favor of Ross reduced accordingly.
Second, there is the matter of a July, 1984, trip to Hawaii for depositions which were aborted. Co-counsel Becker charged for two working days in connection with this trip, for a total of sixteen hours. On November 30, 1984, however, Ross, submitted a bill claiming fees for two ten hours days and three eight hour days. At $90.00 per hour, Ross sought $3960.00 in fees for the Hawaii trip. The record contains no credible evidence suggesting that Ross should be allowed a fee for services in connection with the Hawaii trip in excess of that charged by Becker  two days or sixteen hours. Ross' billing for this trip should be reduced from $3960.00 to $1440.00. The deletion should total $2520.00.
Beyond these specifics, we have a number of general concerns. The billings submitted by Ross to Gilchrist contain cryptic and often unintelligible explanations, to-wit: "Further research and work on case", "in depositions", work on pleadings." On the other hand, Ross made many other entries which are quite specific and detailed and provide Gilchrist with a reasonable summary of the work done. The point is simply that, with respect to many of the items in dispute, the references on Ross' bills to Gilchrist are so inadequate that review of them is quite difficult. With respect to these items of legal services rendered for which Ross claims an entitlement to attorneys fees of and from Gilchrist, we nevertheless affirm. We do this, on the one hand, because it appears that Ross represented Gilchrist for a number of years and that Gilchrist had for years acquiesced in this type of billing. A client will not be allowed to accept an inadequately itemized and explained billing system over a period of time and then, after the attorney has relied thereon to his detriment, claim that the system is inadequate.[4]
Second, our substantial evidence/manifest error rule requires in our view affirmance of the remainder of the time and fees allowed Ross. Not that we have no doubts about the remainder of Ross' bill. The claim for services said to have been rendered after the December preliminary injunction hearing seems particularly dubious. Still, it is not so clear cut that we might reverse and render, as Gilchrist concedes that Ross did some work during this time, just not 109 hours worth.
*1294 In sum, so much of the judgment as awards Ross attorneys fees is reduced by $3960.00 and, as so modified, is affirmed.

V.
The matter of reimbursable legal expenses must be treated differently. We note that Gilchrist makes numerous claims to the effect that Ross has sought reimbursement for legal expenses not properly chargeable to Gilchrist in the Komatsu case. Ross' cocktail and mixed drink bills are among the items questioned. The Chancellor appears not to have decided these questions, for his opinion merely reflects that Gilchrist "had a rather loose agreement with Ross as to the payment of expenses."
We find no express adjudication of the legal expenses question in the court below nor any reasonable basis for inferring findings in favor of Ross. Accordingly, so much of the judgment below as is predicated upon an award to Ross of reimbursable legal expenses is vacated and that entire matter is recommitted to consideration of the Chancellor which at his discretion may be done on the basis of the hearings held and record already made.
AFFIRMED IN PART AS MODIFIED; REVERSED IN PART AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS P.JJ., and PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., not participating.
NOTES
[1] Rule 10(d) is in no way derivative from or patterned upon anything found in the Federal Rules of Civil Procedure upon which so much of the Mississippi Rules have been based. Indeed, one wonders where Rule 10(d) came from, as it seems so inconsistent and at odds with the structure and philosophy of the Rules.
[2] The structure of our Rules of Civil Procedure is such that many rights regarded as quite important may be deemed waived if not timely asserted. See, e.g., Rule 12(h), Miss.R.Civ.P.
[3] The statements were each mailed by Ross to Gilchrist who in no way has denied receipt. Ross states in his brief that the contents of the statements were disclosed and explored in pretrial discovery, a matter not disputed by Gilchrist.
[4] We emphasize, for the benefit of members of the bar to whose attention this opinion may come, that absent Gilchrist's acquiescence, we would regard many of Ross' cryptic explanations of services as inadequate. Such explanations, though necessarily abbreviated, generally ought be sufficiently detailed to advise the client what was done by the attorney during the time for which a fee is claimed at the hourly rate.