BARNES, J.,
for the Court:
¶ 1. Brent C. Bills (Bills) appeals the order of the Washington County Chancery Court, which found him in contempt for failure to pay $18,095.20 in child support and ordered him to pay this amount. On appeal, Bills argues the chancellor erred (1) by finding him in contempt without the order being attached to the petition for contempt, and (2) in imputing Bills was acting in bad faith when he voluntarily took a new job for less money and then unilaterally reduced his child-support payments. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Bills and his ex-wife, Tasha Bills Grimmett (Tasha), were divorced on June 13, 2005, on the ground of irreconcilable differences. The couple had three children; both Bills and Tasha remarried soon after their divorce. In the divorce-settlement agreement, Bills agreed to pay $200 per week as child support if he worked a normal 40-hour week. If Bills worked less than 40 hours per week, he agreed to pay twenty-two percent (22%) of his income.
¶ 3. At the time of the divorce, Bills was working at a flooring company owned by Tasha’s father and his current father-in-law. He was making a salary of $800 per week, plus expenses. When his current father-in-law left the company, Bills also left, and the two men started their own company. As a result, Bills lost his guaranteed weekly income. If he did no work at his new job, he did not get paid. Thus, after he changed jobs, the child-support payments decreased; Bills only paid approximately $400 per month in child support. In 2009, the payments decreased further. Bills admitted that for five months at the end of 2009 and beginning of 2010, he did not work and, consequently, made no support payments. According to Bills, he continued to pay 22% of what he made each month as child support. Tasha testified that Bills’s present wife “writes the child support checks” and that the amount “varies” but averages about $400 a month, “about half of what he was paying.”
*756 ¶ 4. On January 21, 2007, a complaint for support was filed by the Department of Human Services (DHS) against Bills. There was no proof of service, and no judgment was ever entered. On November 13, 2007, a petition for contempt was filed. Again, there was no proof of service, and no judgment was entered. On February 27, 2008, another petition for contempt was filed. There was no proof of service, but Bills did receive a copy in the mail. Bills filed an answer on June 5, 2008. There were two continuances: on October 7, 2008, and on March 29, 2010; orders were entered granting the continuances.
¶ 5. The hearing on the motion for contempt was held on February 23, 2011. At the time of the hearing, Bills had worked for sixteen years as a tile installer. Bills stated that the average wage for this position was approximately $15 per hour. Bills was unable to state his current income. However, Bills testified that his business was not doing well and “[w]ork was getting slow.” He stated that the tile-installation business “just went downhill,” and the business was “not there no more.” After the conclusion of testimony, the chancellor observed: “The question is whether [Bills], in bad faith, voluntarily left his employment with plaintiffs father. In other words, whether [Bills], in bad faith, voluntarily worsened his financial position.” The chancery court, citing Howard v. Howard, 968 So.2d 961 (Miss.Ct.App.2007), and Parker v. Parker, 645 So.2d 1327 (Miss.1994), found that Bills “chose to leave and take less pay” and was in “willful and contumacious” contempt of the divorce decree. The court ordered him to pay $1800 within 90 days and $400 on June 1, 2011, and on the first of each month thereafter, until all arrearages are paid in full. The order was entered on March 31, 2011.
¶ 6. Bills now appeals the judgment of the chancery court. Finding that the evidence supports the chancellor’s findings, we affirm.
STANDARD OF REVIEW
¶ 7. This Court conducts a limited review of matters involving domestic relations. Durr v. Durr, 912 So.2d 1033, 1036 (¶ 5) (Miss.Ct.App.2005) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)). “We will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Id. “In other words, on appeal we are required to respect the findings of fact by the chancellor supported by credible evidence and not manifestly wrong.” Id.
DISCUSSION
I. Whether the chancellor erred by finding Bills in contempt of a judgment when no judgment exists in Cause No. 050105.
¶8. Bills’s first contention is that the chancery court erred by finding him in contempt without an order being attached to the petition. The parties had previously been divorced, and part of the decree was an order to pay child support, which was drafted by the parties. The current version of Mississippi Rule of Civil Procedure 10(d) states: “When any claim or defense is founded on an account or other written instrument, a copy thereof should be attached to or filed with the pleading unless sufficient justification for its omission is stated in the pleading.” The comment to Rule 10(d) provides that while “it remains good practice normally to attach such documents as part of a clear statement of a claim or defense[,] ... the document may be obtained through discovery.” The comment further notes that the original language of Rule 10(d), which provided that a *757 copy “must be attached,” was criticized by the Mississippi Supreme Court “as being ‘at odds with the structure and philosophy of the Rules.’ ” M.R.C.P. 10 cmt. (citing Gilchrist Machinery Co. v. Ross, 493 So.2d 1288, 1292 n. 1 (Miss.1986)). In Gilchrist, the supreme court held: “Where, as here, the fact of the statements was alleged and where it is obvious that there was no surprise to [the defendant], it would be wholly inconsistent with the spirit and purpose of our rules to treat Rule 10(d) as an exclusionary rule.” Gilchrist, 493 So.2d at 1292.
¶ 9. Accordingly, we find Tasha’s failure to include the divorce agreement with her pleading is not fatal, particularly since Bills testified that there was such an agreement, and he did not object to its omission at the hearing. The parties and the judge commented that they were familiar with the document that was the basis for the contempt. Consequently, we find no merit to Bills’s first argument.
II. Whether the chancellor erred in finding that Bills acted in bad faith by reducing his income.
¶ 10. Bills also contends that the chancery court erred in finding that he was acting in bad faith by voluntarily taking a new job for less income and unilaterally reducing his child-support payments. “ ‘Bad faith’ has generally been defined as an obligor’s action to reduce income or assets for the purpose of ‘jeopardizing the interests of his children.’” Parker, 645 So.2d at 1331 (citing Nelson v. Nelson, 225 Or. 257, 357 P.2d 536 (1960)).
¶ 11. In Howard, cited by the chancery court in this case, a physician voluntarily left his position as a surgeon to obtain training to become a pathologist. Howard, 968 So.2d at 965-68 (¶¶ 4-7). As a result, he reduced the child-support payments that he owed and sought a modification. The chancellor held that the doctor was in contempt for failure to meet his child-support obligations. Id. at 971 (¶ 22). We affirmed the finding of contempt, as “the evidence cited by the chancellor substantially supported her finding that [Howard] did not show inability to pay.” Id. at 978 (¶ 45). “We will not reverse the chancellor’s finding of civil contempt absent manifest error or the application of an erroneous legal standard.” Id. at 978 (¶ 43). In Ballard v. Ballard, 843 So.2d 76, 79 (¶ 9) (Miss.Ct.App.2003), this Court stated:
The chancellor sits as fact-finder in matters of this sort. Fisher v. Fisher, 771 So.2d 364 (¶ 8) (Miss.2000). The findings of fact made by the chancellor, when reviewed on appeal, are entitled to substantial deference based on the fact that the chancellor, hearing the evidence first hand, is best positioned to evaluate the credibility of the various witnesses. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).
¶ 12. On appeal, Bills argues that he had to change jobs; that he was “placed in [between] a rock and a hard place.” He also claims that he chose the new job because that was “where he thought he had the best place for future income.” Yet Bills testified at the contempt hearing that changing jobs “wasn’t about the money”; it was about the situation. However, as the chancellor observed at the contempt hearing, Bills worked with his former father-in-law for a year prior to leaving the business, and “[n]o evidence was presented that something happened in September, 2006, that left him with no choice but to leave.” Tasha testified that her father did not want Bills to leave the business. When questioned, Bills admitted that he left voluntarily.
Q. Nobody forced you to leave, did they?
*758 A. No, sir.
Q. But, if you would have stayed at that company, you’d still be making $800.00 a week, maybe more. You may have gotten a raise, correct?
A. Maybe, yes, sir.
Thus, Bills voluntarily abandoned his steady salary to open his own business with his current father-in-law, where he testified that he does not get a salary; he merely gets paid when he works.
¶ 18. After a thorough review of the record, we conclude that the chancellor was operating within the range of discretion afforded in such matters when he determined that Bills was in contempt of the divorce agreement. While continuing to work for one’s former father-in-law could certainly be an untenable situation, there was no testimony that such a situation existed in the instant case. “When we conclude that the chancellor neither abused his discretion nor was his decision manifestly in error, our duty is to affirm.” Ballard, 848 So.2d at 80 (¶ 15) (citing Martin v. Coop, 693 So.2d 912, 915 (Miss.1997)).
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF WASHINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.