## JONES *et al.* v. DAY *et al.*

[89 South. 809. No. 22021.]

SCHOOLS AND SCHOOL DISTRICTS. *Rule requiring pupils to wear uniforms held not void, and construed.*

Where the trustees of an agricultural high school adopted a rule that the pupils of the school should wear a uniform of khaki when in attendance upon the school and when visiting public places within five miles of the school, even on Saturdays and Sundays, this rule is not *ultra vires*, unreasonable, and void, and applies to all students boarding in the dormitory of the school and until their return to the custody of their parents. It applies to those students who live with their parents when they are in the custody of the school authorities; that is to say, after they leave the home of their parents to attend school and until they return to the home after the school is over. It does not apply to those children on holidays when they are within the care, custody, and control of their parents.

APPEAL from chancery court of Wilkinson county.

HON. R. W. CUTRER, Chancellor.

Suit by A. H. Jones and others against John C. Day and others, for an injunction. Bill dismissed, and both parties appeal. Affirmed.

*A. H. Jones,* for appellants.

*Bramlette & Bramlette,* for appellees.

SYKES, P. J., delivered the opinion of the court.

The appellant, A. H. Jones, on behalf of himself and as father and next friend of Ben Shaifer Jones, minor, in this proceeding against the county superintendent and the trustees of the Wilkinson County Agricultural High School, seeks to perpetually enjoin the enforcement and to have declared null and void certain rules and regulations adopted by the board of trustees of this high school, which are as follows: A rule passed on September 10, 1918, as follows:

"It was carried that a uniform of khaki as per sample selected be adopted for high school boys and that all of same be required to wear them, which shall consist of one coat, two pairs of pants, one pair leggings, two shirts, one cap, two black ties, as a minimum, and two coats, three pairs pants, two pairs leggings, three shirts, one cap and three ties as a maximum."

And also the following rule adopted on the 25th day of October, 1920, as follows:

"It was ordered that the principal be instructed to enforce the uniform regulations on all students when visiting public places within five miles of the school even on Saturdays and Sundays."

The bill alleges that under these rules all students and pupils of the high school are required to wear at all times and at all places, at home, at school, and elsewhere this uniform; that these rules are illegal, unauthorized, and *ultra vires* because by them it is attempted to govern and manage the said students and pupils at times and places when the authority of the board of trustees is at an end, and when the students have left the school and are under the control and supervision of their parents. The answer denies the material allegations of the bill and alleges that because of existing conditions in the judgment of the board of trustees it was necessary for the welfare of the school and in order to maintain proper discipline to pass these rules. A temporary injunction was issued which was dissolved on final hearing when decree was entered dismissing the bill and assessing as damage an attorney's fee of twenty-five dollars. The complainant, appellant here, prosecutes an appeal from this decree, and the defendants in the court below, appellees here, prosecute a cross-appeal, presenting solely the question of the inadequacy of the fee allowed in the court below.

In his decree the chancellor held that the orders passed by the board of trustees, requiring the students to wear the uniform not only while in attendance in the school, but when they appear in public places and on the streets, is not

such an unreasonable regulation that the court should interfere when the testimony shows that it aids in the discipline of the school. But further held that, if it is the purpose to invade the home and undertake to say what the children should wear at home, that would be unreasonable.

The authority principally relied upon by the appellant is *Hobbs* v. *Germany,* 94 Miss 469, 49 So. 515, 22 L. R. A. (N. S.) 983. The rule adopted by the teacher of the public school in that case was one requiring the pupils to remain in their homes and study from seven to nine in the evening. In the very exhaustive opinion in that case the court quotes with approval from the opinion of *Dritt* v. *Snodgrass,* 66 Mo. 286, 27 Am. Rep. 343, as follows:

"The directors of a school district are invested with the power and authority to make and execute all needful rules and regulations for the government, management, and control of such school as they may think proper, not inconsistent with the laws of the land. Under the power thus conferred, the directors are not authorized to prescribe a rule which undertakes to regulate the conduct of the children within the district, who have a right to attend the school, after they are dismissed from it and remitted to the custody and care of the parent or guardian. They have the unquestioned right to make needful rules for the control of the pupils while at school, and under the charge of the person or persons who teach it, and it would be the duty of the teacher to enforce such rules, when made. While in the teacher's charge, the parent would have no right to invade the school room and interfere with him in its management. On the other hand, when the pupil is released and sent back to its home, neither the teachers nor directors have the authority to follow him thither, and govern his conduct while under the parental eye. It certainly could not have been the design of the legislature to take from the parent the control of his child while not at school, and invest it in a board of directors and teachers of a school. If they can prescribe a rule which denies to the parent the right to allow a child to attend a social gathering, except upon pain

of expulsion from a school which the law gives him the right to attend, may they not prescribe a rule which would forbid the parent from allowing the child from attending a particular church, or any church at all, and thus step in *loco parentis* and supersede entirely parental authority? For offenses committed by the scholar while at school he is amenable to the laws of the school; but under the charge of the parent or guardian he is answerable alone to him."

Chapter 186, Laws of 1914 (section 3421, Hemingway's Code), which deals with the appointment and the powers of the trustees, among other things provides that they "shall have full power to do all things necessary to the successful operation of said school."

It will be noted from an examination of these laws relating to agricultural high schools that the power is given them to have dormitories where students may board during the school term. The students of these agricultural high schools who board in the dormitories are under the care and custody of the school authorities during the entire scholastic session, and until they have returned to the care and custody of their parents. For the proper maintenance the board of trustees of this school had a right to pass these orders which would apply to all students boarding in the dormitory during the time that they remained as students of the school. These rules will continue to apply to them until they cease to be under the care and control of the school management and return to the parental charge.

With reference to the students who are merely day pupils of this school and who each afternoon return to the parental charge, the order would not apply to them while under the control of their parents. That is to say after they return home from school in the afternoon they would be under the control of their parents until they again start for school. This order would not control what apparel these children should wear after school hours and while under parental control.

Children are under parental control until their parents start them to the school during the day. They are under

the parental control during the school holidays, which I assume from this record are Saturdays and Sundays. Consequently the orders here in question would apply to those students boarding in the dormitory, if there be one, during the scholastic term, but would not apply to those students living with their parents except while going to, at the school, and returning to the parental roof. We understand the decree of the chancellor to be to this effect.

A temporary injunction was issued which was not dissolved until the final hearing of the cause on its merits. The end and aim, however, of this litigation was injunctive relief sought, viz. to perpetually enjoin the enforcement of these rules and to declare them null and void.     It was therefore proper to allow the appellees a reasonable attorney's fee. *Mims* v. *Swindle,* 124 Miss. 686, 87 So. 151; *Curphy* v. *Terrell,* 89 Miss. 624, 42 So. 235.

In fixing the amount of a reasonable attorney's fee for the dissolution of the injunction necessarily the chancellor is vested with discretionary powers. In this case we cannot say that the fee fixed by the chancellor is an inadequate one. The decree is affirmed, both on direct and cross-appeal.

*Affirmed.*