# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CT-00417-SCT

*NEW BELLUM HOMES, INC.*

*v.*

*KEITH AND BILLIE JEAN GIFFIN*

### <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 02/10/1998 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | W. E. GORE, JR. |
| | PAUL E. ROGERS |
| ATTORNEY FOR APPELLEE: | VERNON H. CHADWICK |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED IN PART; |
| | REVERSED IN PART- 02/01/2001 |
| MOTION FOR REHEARING FILED: | 2/23/2001; denied and opinion clarified at paragraph 10 5/17/2001 |
| MANDATE ISSUED: | 5/24/2001; recalled and modified 6/27/2002; amended mandate issued 7/9/2002 |

**EN BANC.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is the case of the dream house that became a nightmare. The homebuilder and the homeowners eventually raised numerous allegations of faulty workmanship and cost overruns against each other in the Rankin County Circuit Court, the Court of Appeals, and now this Court. We granted certiorari as requested by the homeowners Keith and Billie Jean Giffin to consider their objections to the decision of the Court of Appeals. After due consideration we affirm the judgment of the Court of Appeals on all issues except for the matter of the replacement of an allegedly faulty French drain. On that issue and all others, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court in toto.

### I.

¶2. The following statement of facts is taken from the opinion of the Court of Appeals in *New Bellum Homes, Inc. v. Giffin*, No. 98-CA-00417-COA at ¶1-3 (Miss. Ct. App. April 11, 2000):

On August 21, 1994, New Bellum Homes, Inc. executed a written contract with Keith and Billie Jean Giffin for the construction of a home on the reservoir in Rankin County, Mississippi, at an agreed price of $309,000. On December 18, 1995, New Bellum filed a complaint against the Giffins claiming

$92,305 in actual damages for breach of contract, $100,000 in damages for impairment to its credit rating as a result of the Giffins' wrongful withholding of funds from the last contractual draw, and $500,000 in punitive damages, prejudgment interest and attorney's fees.

The Giffins filed a counterclaim charging New Bellum with numerous instances of breach of contract and negligence, and seeking actual, itemized damages in the amount of $73,075, punitive damages in the amount of $500,000, plus interest on their permanent construction loan for delay in completion of the contract, prejudgment interest and attorney's fees.

A bench trial was held by agreement of the parties. The trial judge found that a balance of $60,850 was owed under the contract and that the Giffins were liable to New Bellum in the amount of $29,658.70 for cost overruns, changes and extras, for a total of $90,508.70. The judge also found that New Bellum was liable to the Giffins for credits in the amount of $10,384, claims in the amount of $36,647.45, compensation for defective mortar joints and other brick problems in the amount of $22,500 and interest paid on the construction loan in the amount of $4,938.08, for a total setoff of $74,469.53. Final judgment in the amount of $16,039.17 was entered for New Bellum against the Giffins.

Specifically, the Giffins were awarded $12,895 for replacement of a French drain.

¶3. New Bellum Homes appealed. On direct appeal the Court of Appeals affirmed in part, reversed and rendered in part, and reversed and remanded in part. On the matter of the French drain, the Court of Appeals reversed and remanded

for a determination of whether, with the addition of wet wells and sump pumps, the drains installed by New Bellum would have drained the water from beneath the house. If the determination is that proper drainage would have been obtained, then New Bellum will not be liable for the replacement drains. On the other hand, if the determination is that even with the addition of the sump pumps and wet wells, the water would not have been drained, then New Bellum shall be liable for the replacement costs of the drains but not the wet wells and sump pump. We arrive at this disposition because as discussed below, we do not believe the evidence supports the trial judge's finding that under the contract New Bellum was required to install sump pumps or whatever else was necessary to drain the water from beneath the house. . . . The plans and specifications were prepared not by New Bellum but by the Giffins. Under these circumstances, we conclude the trial judge manifestly erred in interpreting the plans and specifications so broadly and liberally. Accordingly, we reverse and render that portion of the trial judge's decision finding New Bellum liable for the cost of the wet wells and sump pumps.

*New Bellum Homes, Inc. v. Giffin*, No. 98-CA-00417-COA at ¶28, 30 (Miss. Ct. App. April 11, 2000).

¶4. The appropriate standard of review may be found in *Amerson v. State*, 648 So.2d 58, 60 (Miss. 1994): "For review of the findings of a trial judge sitting without a jury, this Court will reverse 'only where the findings of the trial judge are manifestly erroneous or clearly wrong.'" A judge sitting without a jury "has sole authority for determining credibility of the witnesses." *Rice Researchers, Inc. v. Hiter*, 512 So.2d 1259, 1265 (Miss. 1987).

## II.

¶5. Michael Burchfield installed a standard French drain at the Giffins' house. He did not install sump pumps because he did not feel that this was necessary. Burchfield testified that the only time he ever saw water under the Giffins' house was when it was raining before the house had its roof completed. He checked later and did not see any water under the house. Burchfield testified that not long after he finished the drains Bob's Pool Service came to the home at the Giffins' direction to install a pool and in the process dug up the French drain with their backhoe and also damaged another part of it by backing over it with their concrete truck. Burchfield and Leo Giurintano, part owner of New Bellum Homes, repaired the drain after this, and Burchfield stated that it was working.

¶6. Paul Reed was hired by the Giffins to install a new French drain after New Bellum had completed its work. Reed testified that the original drain was too shallow as it was installed at the dirt level of the crawl space when it should have been installed at least six inches below that level. Reed stated that when he checked the crawl space fifty percent of it was covered in standing water. In addition to, or as part of the French drain system, Reed also installed wet wells for receipt of the drains' discharge. Reed defined a wet well as a reservoir with an automatic sump pump in it, necessary where a lot does not have enough fall for a drainage system dependent solely on gravity flow. The circuit court awarded to the Giffins the amount Reed claimed as the cost of installing the new system, $12,895, finding that the original French drain never worked properly.

¶7. The Court of Appeals reversed and remanded in part and rendered in part, finding that there was a question as to whether the original French drain had ever worked properly and to what extent it was damaged by Bob's Pool Service. The Court of Appeals found that either lack of depth and fall was not the sole problem with New Bellum's drains or the wet well installed by Reed was unnecessary. The Court of Appeals concluded that if water was under the house after the installation of New Bellum's drains, then it was not caused solely by the allegedly improper installation. The Court of Appeals reversed and remanded

> for a determination of whether, with the addition of wet wells and sump pumps, the drains installed by New Bellum would have drained the water from beneath the house. If the determination is that proper drainage would have been obtained, then New Bellum will not be liable for the replacement drains. On the other hand, if the determination is that even with the addition of the sump pumps and well wells, the water would not have been drained, then New Bellum shall be liable for the replacement costs of the drains but not the wet wells and sump pump.

*New Bellum* at ¶ 28. The Court of Appeals based this conclusion in part on the finding that New Bellum was not liable for the cost of the wet wells because the construction contract did not require a guarantee of a dry surface under the house.

¶8. New Bellum maintained that the French drain was installed properly and was adequate for the job and worked properly until Bob's Pool Service damaged it. Paul Reed testified that New Bellum's drain was not properly installed and was inadequate anyway for that type of lot without the wet well to keep water out of the crawl space. The Court of Appeals found that the following language in the construction contract was incorrectly interpreted by the circuit court to require French drains plus wet wells: "Fill work will consist of importing soil to low, water-holding level in middle of lot (from North to South) with topsoil of red sand-clay - enough imported soil should be brought in such that the surface dirt under the house is not wet (french drains under house should be placed to help drain this water away)"

¶9. The Giffins argue that the Court of Appeals erred in reversing on this issue, stating instead that it should

have affirmed based on *Grady v. Walls*, 755 So.2d 533, 536 (Miss. Ct. App. 1999), which states that "the right to recovery is not precluded by uncertainty regarding exact amount of damages." We find that there was substantial evidence before the circuit court which supported the finding that the drainage system installed by Paul Reed was necessary to provide proper drainage for this house on this kind of lot. That New Bellum, the builder, did not recognize this or explicitly place it in the contract in greater detail does not shield it from liability. The judgment of the Court of Appeals on the issue of the French drain is reversed, and the judgment of the Rankin County Circuit Court on this sole issue is reinstated. The judgment of the Court of Appeals is in all other aspects affirmed, and the judgment of the trial court is reinstated in toto.

¶10. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED EXCEPT AS TO THE DRAINAGE ISSUE WHICH IS REVERSED AND THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS REINSTATED.**

**PITTMAN, C.J., BANKS, P.J., SMITH, MILLS, DIAZ AND EASLEY, JJ.,CONCUR. COBB, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. WALLER, J., NOT PARTICIPATING.**