ISHEE, J., for the Court:
¶ 1. Thomas Lindley was convicted on March 15, 2013, in the Lafayette County Circuit Court of simple domestic violence. He was sentenced to six months, with five months suspended, in the custody of the Lafayette County Detention Center (LCDC). He was also ordered to pay a fine of $1,000. Aggrieved, Lindley appeals.
STATEMENT OF FACTS
¶ 2, On February 6, 2010, Lindley’s daughter, Sarah Lindley,[1] and his ex-wife, Martha Lindley, were having an argument at Martha’s home in Lafayette County, Mississippi. The argument stemmed from Sarah’s complaint that Lindley and Martha treated her differently than her younger siblings, Mark Lindley and Elizabeth Lindley. Mark and Elizabeth were home when the argument occurred. At the time, Sarah, Mark, and Elizabeth were approximately twenty years old, sixteen years old, and fourteen years old, respectively. Lindley and Martha had been separated for seven years and did not live in the same house.
¶ 3. The argument between Sarah and Martha occurred in Martha’s bedroom. Sarah was confronting Martha and had backed Martha into a corner. Mark, who was in another room, became concerned when he heard Sarah threaten Martha. Mark then called Lindley and asked that he come to the home. Shortly after, Mark left with a friend. At trial, Sarah and Martha testified that Sarah also called Lindley at some point during the argument to come to the home so that she could talk to him.
¶ 4. Upon Lindley’s arrival, he found Sarah and Martha in the living room. Martha was standing up, and Sarah was seated on a couch. Lindley entered the room and sat on a love seat next to the couch. At trial, Martha testified that Sarah was crying and “pouring out [her] heart” to Lindley but that he was laughing at Sarah. Martha stated that Sarah then *656 got on Lindley’s lap, knelt on top of him, and said, “Why don’t you love me?” Subsequently, Martha witnessed Lindley stand up and throw Sarah across the room. Martha stated that Sarah hit the couch, and she thought Lindley fell down too. She declared that the incident caused the couch to move and the coffee table to be knocked over.
¶ 5. Sarah testified that when Lindley arrived and sat on the love seat, she went to sit next to him. She stated that while she was confronting him, he grabbed her by the neck and threw her down. She said that she landed by the fireplace and that he hit the floor. In the process, a pair of scissors fell on the floor that had been on the couch or the coffee table. Sarah stood up, grabbed the scissors and her cell phone, and ran outside. Sarah testified that she was terrified Lindley would kill her and that she grabbed the pair of scissors, so he could not use them against her.
¶ 6. While outside, Sarah called 911. Martha remained inside with Lindley, who she said was enraged. Deputy David Box of the Lafayette County Sheriffs Department responded to the call. When Deputy Box arrived on the scene at 3:30 p.m., it was cold and getting dark outside. Sarah approached him from the left side of the house. He noticed that she was wearing shorts and a t-shirt, had several scratches on her neck, and appeared to be upset. Sarah informed Deputy Box that she had been assaulted by her father.
¶ 7. Shortly after Deputy Box’s arrival, Martha and Lindley came outside. Because of Sarah’s report and the scratches present on her arm, Deputy Box arrested Lindley for domestic violence. After placing Lindley in his car, Deputy Box returned to the home to investigate inside and question Martha. While he stated that he did not notice any signs of a struggle or a fight in the home, he testified that Martha’s version of events went along with Sarah’s version. Deputy Box then returned to his car and questioned Lindley. Lindley stated that he was only attempting to protect himself from Sarah, who was kneeing him, or attempting to knee him, in the chest. Deputy Box stated that Lind-ley did not seem overly upset and was cooperative at all times.
¶ 8. On February 8, 2010, Sarah filed charges against Lindley. At trial, Sarah, Martha, and Deputy Box testified on behalf of the State. Mark testified on behalf of Lindley. Sarah admitted that she did not have a great relationship with Lindley. She stated that this was not the first altercation she had with him, and he was always very aggressive. Sarah also said that she went to Urgent Care following the altercation because she was concerned about her neck.
¶ 9. Martha testified that Sarah was the aggressive party in their argument, but that Sarah had not hurt or touched her. She stated that she allowed Sarah to call Lindley because it sometimes helped Sarah to talk to her father when she was angry. Martha described Lindley as being jovial while Sarah was talking to him, but that he suddenly became extremely angry. While Martha could not recall whether Sarah sought medical attention following the incident, she did remember Sarah later having problems "with a device located near her spine to help with interstitial cystitis. She believed this could have been due to the altercation with Lindley. Martha also admitted that she had previously reported Lindley for domestic violence in 2003. She stated that he was arrested, but that she ultimately dropped the charges.
¶ 10. Mark testified that Sarah started the argument with Martha. While he admitted that he was not present in the room, he stated that he heard screaming and sounds as though items in the room *657 were being thrown. Due to this behavior, he contacted Lindley because he felt it was necessary out of concern that Sarah was threatening Martha. Following the evidence put forth at trial, Lindley moved to dismiss the case, arguing that the State failed to prove its case beyond a reasonable doubt. The motion was denied. Subsequently, the circuit court sentenced Lindley to six months, with five months suspended, in the custody of the LCDC. Lindley was also assessed a $1,000 fine. Lindley now appeals.
STANDARD OF REVIEW
¶ 11. “The standard of review for a judgment entered following a bench trial is well settled. In a bench trial, the trial judge is ‘the jury’ for all purposes of resolving issues of fact.” Sendelweck v. State, 101 So.3d 734, 738-39 (¶ 19) (Miss.2012). “The Mississippi Supreme Court has stated that ... for review of the findings of a trial judge sitting without a jury, the appellate court will reverse only where the findings of the trial judge are manifestly erroneous or clearly wrong.” Id. at 739 (¶ 19) (internal citations omitted).
DISCUSSION
I. Sufficiency of the Evidence
¶ 12. On appeal, Lindley argues that the evidence used to convict him of simple domestic violence was insufficient. Lindley contends that there were too many critical contradictions in the evidence and testimony used to convict him to legally justify his convictions. In order for the evidence to be found sufficient to sustain a conviction, the evidence must show “beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). This Court will reverse a conviction only if the evidence “point[s] in favor of the defendant on any element of the offense with sufficient force that [a] reasonable [fact-finder] could not have found beyond a reasonable doubt that the defendant was guilty.” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 13. Lindley was convicted under Mississippi Code Annotated section 97-3-7(3) (Supp.2009), which provides in part:
A person is guilty of simple domestic violence who commits simple assault as described in subsection (1) of this section against a current or former spouse or a child of that person, a person living as a spouse or who formerly lived as a spouse with the defendant or a child of that person, other persons related by consanguinity or affinity who reside with or formerly resided with the defendant, a person who has a current or former dating relationship with the defendant, or a person with whom the defendant has had a biological or legally adopted child and, upon conviction, the defendant shall be punished as provided under subsection (1) of this section[.]
Mississippi Code Annotated section 97-3-7(1) (Supp.2009) states:
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly[,] or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm[.]
At trial, there was ample evidence to support that Lindley committed simple domestic violence on Sarah by purposely, knowingly, or recklessly causing bodily in *658 jury to her. During trial, the State presented evidence through witness testimony. Both Sarah and Martha testified that Lindley injured Sarah by throwing her down. Them testimony was supported by the testimony of the first-responding police officer, Deputy Box, who testified that Sarah and Martha had informed him that Lindley had assaulted Sarah. Further, Deputy Box stated under oath that when he arrived on the scene, Sarah was visibly upset and had several scratches on her neck and legs.
¶ 14. After carefully considering the evidence presented, we find that the evidence presented by the State was legally sufficient to convict Lindley of simple domestic violence. Further, we find that a reasonable fact-finder could have found that Lindley committed simple domestic violence beyond a reasonable doubt. This issue is without merit.
II. Weight of the Evidence
¶ 15. Lindley also argues that the verdict was against the overwhelming weight of the evidence. A jury’s verdict will not be disturbed unless “it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18) (citing Herring v. State, 691 So.2d 948, 957 (Miss.1997)). As stated previously, the testimony presented at trial reflected that Lindley committed simple domestic violence on Sarah by purposely, knowingly, or recklessly causing bodily injury to her. It is well settled that “[t]he trial judge has the sole authority to determine the credibility of the witnesses when sitting as trier of fact in a bench trial.” Walker v. State, 913 So.2d 411, 413 (¶ 9) (Miss.Ct.App.2005) (citing Rice Researchers Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987)). We cannot say that the verdict was against the weight of the evidence.
III. Plain Error
¶ 16. Finally, Lindley argues that the circuit court committed plain error when he was sentenced to pay a fine exceeding the statutory maximum. During sentencing, the circuit court judge assessed a fine of $1,000. Mississippi Code Annotated section 97-3-7(1) (Supp.2009) provides, in part, that “upon conviction, [the defendant] shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.” Since Lindley’s fine was double the amount allotted by the statute, we find that the circuit court erred. As such, the judgment of the circuit court is reversed in part as to the fine only, and the case is remanded for resentencing. In all other respects, the judgment is affirmed.
¶ 17. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE DOMESTIC VIOLENCE AND SENTENCE OF SIX MONTHS, WITH FIVE MONTHS SUSPENDED, IN THE CUSTODY OF THE LAFAYETTE COUNTY DETENTION CENTER, IS AFFIRMED. THE SENTENCE TO PAY A $1,000 FINE IS REVERSED, AND THIS CASE IS REMANDED FOR RE-SENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ„ CONCUR.

. Based on the sensitive nature of these proceedings and in the interest of privacy, we have substituted fictitious names for Lindley's family.