CHANDLER, J.,
for the Court.
¶ 1. Jeanne Salter Day sued Ocean Springs Hospital System (OSHS) pursuant to the Mississippi Tort Claims Act, Mississippi Code Annotated § 11-46-1 to 23 (Rev.2002). Day alleged that, when visiting a patient at the hospital, she slipped and fell on a puddle of water, injuring her wrist. After a bench trial, the lower court found that Day had failed to prove that the hospital was negligent. Day appeals, arguing (1) that the lower court improperly disregarded competent and uncontroverted evidence that Day’s fall was caused by a dangerous condition created by OSHS; and (2) the lower court improperly disregarded competent and uncontroverted medical expert opinion testimony that Day’s wrist injury was causally connected to her fall at the hospital.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Day’s son, Jason Hollingsworth, was a patient at OSHS for two weeks in October 1996. Hollingsworth had a stomach virus. Day visited Hollingsworth almost every day of his stay at OSHS. On October 21, 1996, Hollingsworth underwent an endoscopy. That morning, Day visited Holl-ingsworth in his hospital room. Day stated that, just before entering the room, she noticed a woman with a yellow rolling mop bucket a few rooms down from Hollings-worth’s. Day stated that she did not see any caution signs.
¶4. Day testified that, as she entered the doorway of Hollingsworth’s room, she slipped and fell on some water on the floor. Day stated that she landed on her outstretched right hand. She stated that, upon arising from the fall, she noticed that her pants were wet with water. Day further testified that, after the fall, she observed a puddle of water stretching from the door to the air conditioning unit on the other side of the room. She wiped up the water with a towel which she found in the room. However, an OSHS employee testified that the air conditioning unit actually was located just inside the doorway, not *248 across the room from the doorway as alleged by Day.
¶ 5. Day was unable to recall whether Hollingsworth was in the room at the time of her fall or whether he was in surgery. Day stated that Hollingsworth was absent during the surgery for forty-five minutes to án hour. However, hospital records revealed that Hollingsworth was absent from the room for five hours. On direct examination, Hollingsworth stated that, when his mother came into his room, he warned her that the floors had just been mopped and were wet. On cross-examination, Hollingsworth testified that he had been heavily sedated on the day of the surgery and, in fact, he could not recall whether he had warned his mother about wet floors on the day of the surgery or on some other day. Hollingsworth expressed certainty that, on the day of the surgery, his mother told him that she had fallen and hurt her wrist while coming in the door to his room.
¶ 6. Hollingsworth stated that, when he returned from surgery, Day showed her injured wrist to him and to two nurses. Hollingsworth stated that Day’s wrist appeared swollen. He advised Day to go to the emergency room to get the wrist examined. Day stated that she went to OSHS’s emergency room, showed her wrist to a doctor, and told him that she had fallen in a patient’s room. Day stated that the doctor examined her wrist, but no incident report or admittance record was generated. According to Day, the doctor opined that her wrist was badly sprained and told her to return in a week to ten days if there was no improvement.
¶ 7. That afternoon, Day’s friend Bobby Wilson gave Day a ride home from the hospital. Day told Wilson about the fall and complained of pain in her wrist. Wilson observed that Day’s wrist was puffy and that Day could hardly use it.
¶ 8. On October 30, 1996, Day visited the emergency room at OSHS, complaining of pain in her wrist. She saw a triage nurse and a doctor. The doctor did not note any swelling or bruising, and x-rays revealed no fracture. In the next few months, Day continued to have difficulty with her wrist and saw several physicians. Dr. Harold Hawkins diagnosed Day with avascular necrosis of the navicular bone. Dr. Harold Stokes concurred in this diagnosis. Dr. Stokes performed two surgeries on Day’s wrist and stated that at least one more surgery was required. Dr. Stokes opined that Day’s wrist condition was the result of her having fallen at OSHS on October 21, 1996. Dr. Stokes stated that Day’s condition had been caused by trauma to the wrist. However, Dr. Stokes stated that his opinion as to how the wrist trauma had occurred was based solely on the history provided by Day.
¶ 9. Kathy Dier worked in the risk management department at OSHS in 1996. She stated that OSHS’s policy was to generate an incident report for any accidents occurring at OSHS. She stated that all OSHS employees were educated on the policies and procedures governing incident reports. Dier stated that, had Day informed a nurse of her fall, the nurse would have informed her supervisor, who would have generated an incident report. Then, the nurse would have offered to take Day to the emergency room, where Day would have been registered before being seen by a physician. Dier testified that federal regulations required OSHS to screen all patients admitted to the emergency room. Dier testified that no incident report existed for October 21, 1996. Dier further testified that Day’s description of her October 21 emergency room visit contravened OSHS’s policies and procedures for registering all emergency room patients.
*249 ¶ 10. A photograph of a large gray cleaning cart with two mop buckets and four detachable caution signs was admitted into evidence. OSHS employees testified that this cart was used to clean Hollings-worth’s room and the surrounding patient rooms. Deborah Lawler, a housekeeping aide, testified that OSHS had been unable to identify the person who had cleaned Hollingsworth’s room on October 21, 1996. Lawler stated that she usually cleaned the room, but that she was absent from work on October 21. Lawler testified that OSHS employees adhere to a strict procedure for wet mopping halls and patient rooms. Each room is mopped with a damp mop and then a caution sign is placed in each doorway. She stated that, since the mop is only damp, water never collects on the floor. After four or five rooms are mopped, the employee returns to the first room, performs a visual check, and removes the caution sign only if the floor is dry. Joseph Barlow, OSHS’s Director of Environmental Services, stated that it took between five and ten minutes for a room’s floor to dry, and that a caution sign remained in place for twenty-five to thirty minutes after a room was mopped.
¶ 11. The trial court found that Day had failed to prove the negligence elements of breach of duty and causation, and entered a judgment in favor of OSHS. In so finding, the court stated:
The court finds that [OSHS] does owe a duty to [Day] to use reasonable care to prevent injury. Even under the highest burden placed upon a property owner, an owner is not an insurer of all injuries which occur on its property. The highest burden placed upon a property owner is to exercise reasonable or ordinary care to keep its premises in a reasonably safe condition or warn of dangerous conditions not readily apparent, which the owner knows of, or should know of, in the exercise of reasonable care. Taylor v. Biloxi Regional Med. Ctr., 737 So.2d 435, 437(¶ 5) (Miss.Ct.App.1999) (citing Fulton v. Robinson Ind., Inc., 664 So.2d 170, 175 (Miss.1995)).
[[Image here]]
Based upon the evidence presented in this case, [Day] has failed to provide sufficient proof that the defendant has breached this duty. Ms. Day is the only witness to the alleged fall and she was repeatedly discredited on cross-examination as to how the incident occurred, whether her son was in the room at the time of the fall, the location of the air conditioning controls, the description of the mop bucket and why she did not immediately report the fall to a hospital employee. Further, her testimony concerning the emergency department visit October 21, 1996, was questionable at best. The testimony that no incident report was made and no emergency department records exist for the day in question is certainly significant. In order to find for [Day], this court must believe that employees from two totally separate departments, independently of each other, violated crucial hospital policies and procedures. It must be remembered that the burden of proof rests solely with [Day]. Ms. Day wholly failed to prove by a preponderance of the evidence that any employee of [OSHS], by act or omission, created a dangerous condition which was the proximate cause of her alleged injury. Likewise, [Day] failed to establish that a third person created a dangerous condition of which [OSHS] had actual or constructive knowledge. There was no testimony concerning any knowledge possessed by [OSHS] as to any alleged dangerous condition or to the time period that the condition existed. Without any such testimony, [Day] fails to establish that [OSHS] violated any duty owed her. It is the opinion of this court that [Day] has failed to prove the allegation *250 of negligence against Singing River Hospital System.
Even if this court were to find for [Day] on the issue of negligence, she is required to produce expert testimony that [OSHS]’s negligence was the proximate cause of her alleged injuries. The treating doctors testified that they relied solely on the history given to them by Ms. Day in forming their opinions as to the cause of her injuries. There were no eyewitnesses to her alleged fall, no documentation by way of incident reports or emergency room records on the date of her alleged fall and no medical evidence that her injuries were proximately caused by a fall on October 21, 1996. This court finds that [Day] failed to meet her burden of proof required to establish proximate cause by a preponderance of the evidence.
STANDARD OF REVIEW
¶ 12. This court affords a circuit court judge sitting without a jury the same deference as a chancellor. City of Jackson v. Perry, 764 So.2d 373, 376(¶9) (Miss.2000). We review errors of law de novo. Id. We will affirm if, after reviewing the entire record, we find that the judge’s findings of fact are supported by substantial, credible evidence and are not manifestly wrong or clearly erroneous. Id. The trial judge in a bench trial “has sole authority for determining credibility of the witnesses.” Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987).
LAW AND ANALYSIS
I. DID THE FACT-FINDER IMPROPERLY DISREGARD COMPETENT AND UNCONTROVERTED EVIDENCE THAT DAY’S FALL WAS CAUSED BY A DANGEROUS CONDITION CREATED BY OSHS?
¶ 13. At the trial, Day had the burden of producing evidence sufficient to establish the tort elements of duty, breach of duty, proximate causation, and injury. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). Notably, in a premises liability case, merely proving that an accident occurred is not sufficient to establish liability. Taylor v. Biloxi Regional Med. Ctr., 737 So.2d 435, 437(¶ 5) (Miss.Ct.App.1999) (citing Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994)). Rather, the plaintiff must prove either (1) that the owner caused the dangerous condition, or (2) if a third person caused the dangerous condition, that the owner had actual or constructive knowledge of the dangerous condition. Id.
¶ 14. Day contends that she presented uncontroverted evidence that a dangerous condition, specifically, the wet floor, was created by OSHS. She contends that OSHS presented no evidence to disprove her version of the events that occurred on October 21, 1996. Day argues that, pursuant to evidentiary principles governing un-controverted evidence, the trial court was bound to accept as true Day’s evidence that OSHS was responsible for the wet floor that caused Day’s fall. Essentially, Day’s argument is that her proof of OSHS’s negligence was so strong that she was entitled to a directed verdict at the close of OSHS’s evidence. Day cites the case of Hulitt v. Jones, 220 Miss. 827, 72 So.2d 204 (1954) in support of her argument.
¶ 15. In Hulitt, the supreme court stated that “the testimony of a witness which is not contradicted, either by direct evidence or by circumstances, must be taken as true.” Id. at 833, 72 So.2d at 207. The court stated that a chancellor or a jury does not have an arbitrary right to disregard undisputed testimony that is not inherently improbable, incredible, or un *251 reasonable. Id. Such testimony must be accepted as true even if the witness is a party or is interested in the case. A & F Prop., LLC v. Lake Caroline, Inc., 775 So.2d 1276, 1282(¶ 17) (Miss.Ct.App.2000) (quoting Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 635, 53 So.2d 69, 75 (1951)).
¶ 16. While Day correctly states the rule applicable to undisputed testimony, this rule did not apply to Day’s evidence concerning the wet floor because that evidence was not uncontroverted. Certainly, OSHS presented no eyewitness testimony that Day did not fall at OSHS on October 21, 1996, or that the floor was not wet that morning. However, eyewitness testimony was not necessary to controvert Day’s version of events. OSHS presented evidence tending to show that Day did not fall at the hospital on October 21, 1996 and that no dangerous condition existed in Hollings-worth’s room on October 21, 1996. For example, OSHS presented evidence that, had a hospital employee been notified of Day’s fall, an incident report would have been completed. No incident report was completed though Day testified that she told two nurses about her fall. OSHS showed that no emergency room visit record existed for Day on October 21, 1996 though regulations required OSHS to make such records. OSHS also presented evidence about its floor-mopping procedures and produced a picture of the cleaning cart that conflicted with Day’s testimony. Further, as the fact-finder, the trial court was permitted to evaluate the testimony of Day, Hollingsworth, and Wilson to determine whether it was improbable, incredible, or unreasonable. Rice Researchers, Inc., 512 So.2d at 1265. After weighing all of the evidence, the court found that Day had failed to prove that OSHS had created a dangerous condition or had actual or constructive knowledge of the condition. There was sufficient evidence to permit this finding. This issue is without merit.
II. DID THE FACT-FINDER IMPROPERLY DISREGARD COMPETENT AND UNCONTROVERTED MEDICAL EXPERT OPINION TESTIMONY THAT DAY’S WRIST INJURY WAS CAUSALLY CONNECTED TO THE FALL ON OSHS’S PREMISES ON OCTOBER 21,1996?
¶ 17. Next, Day argues that the trial court was bound to accept as true her proof of proximate causation. As recognized by the trial court, the sole proof that Day’s wrist injury had been caused by an accident at OSHS on October 21, 1996 was the history which Day gave to her physicians and upon which they based their opinions as to causation. Drs. Hawkins and Stokes testified that Day’s injury was consistent with a hyperextension injury from a fall, and Dr. Stokes testified that, in his opinion, Day’s injury was the result of trauma. Day argues that, in the absence of evidence to the contrary, history given by a patient to a physician is conclusive proof of the cause of an injury. Again, Day’s essential argument is that she was entitled to a directed verdict. Day cites Tucker v. Kelly, 381 So.2d 1030, 1031 (Miss.1980) in support of this proposition.
¶ 18. In Tucker, Kelly was involved in an automobile collision. Immediately thereafter, he suffered pain in his back. The court peremptorily instructed the jury to find for Kelly. The jury awarded Kelly damage’s for property loss. The question before the supreme court was whether the strength of the evidence that Kelly’s back injury was caused by the collision warranted a new trial on the issue of compensatory damages for the back injury. Id. Kelly’s doctors had opined that the back injury had been caused by the collision. These doctors primarily had based their *252 opinions upon the history given by Kelly, and their opinions were undisputed. The court held that, given this evidence, Kelly was entitled to a new trial on the issue of damages for his back injury. Id. at 1032.
¶ 19. Contrary to Day’s argument, Tucker does not establish that history given by a patient to a physician is conclusive proof of the cause of an injury. Rather, in Tucker, the fact of the accident, the witness testimony, and the opinions of Tucker’s physicians were undisputed and of sufficient strength to entitle Kelly to a new trial. In the instant case, the issue of whether an accident occurred at all as alleged by Day was hotly contested. No physician opined that Day’s injury only could have been caused as alleged by Day. Day’s recitation of the history of the injury to her physicians fell far short of conclusively establishing the cause of the injury and entitling her to a directed verdict. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.