JAMES, J., for the Court:
¶ 1. Marion Dyse filed a personal-injury action against BKS Inc. after she was sprayed with gasoline from a leaking gas-pump hose at a BKS-owned gas station, Keith’s Superstore # 155. Finding that Dyse failed to present a genuine issue of material fact as to damages, the trial court granted BKS summary judgment. The trial court sua sponte found the suit was frivolous and ordered Dyse to pay $2,500 in sanctions. As we find genuine issues of material fact were in dispute as to Dyse’s claim, we reverse the trial court’s grant of summary judgment, and remand this case for reinstatement on the trial court’s docket. The award of sanctions is reversed and rendered.
FACTS AND PROCEDURAL HISTORY
¶ 2. On December 13, 2009, Dyse stopped at Keith’s Superstore # 155 in Oloh, Mississippi, to purchase gasoline for her car. After paying the store clerk in advance, Dyse returned to her car and picked up the pump handle. As Dyse pressed the handle, gasoline sprayed onto her face and clothes. Dyse immediately released the handle. Dyse reported the incident to the store clerk, who, after Dyse asked, told her where a sink was located so she could wash the gasoline off her skin. The store clerk assisted Dyse in completing an incident report. Dyse’s husband met her at the gas station and took her to the Wesley Medieal Center emergency room, where Dyse was treated and released. Dyse complained that after the gasoline exposure, she had a continued burning sensation in her eyes, nose, and throat, as well as anxiety and chest pain. She went to three follow-up appointments with her family doctor and one visit with an eye doctor.
¶ 3. On April 16, 2010, Dyse filed suit in the Lamar County Circuit Court against BKS. Dyse’s complaint alleged that BKS negligently failed to warn her of the leaks or defects in the hose, failed to repair the leaks in the hose, failed to inspect the hose, and/or failed to close the hose until it could be repaired. Dyse sought $250,000 *168 in damages. On May 11, 2012, BKS filed a summary-judgment motion, which the trial court granted. Finding the action was frivolous, the trial court sua sponte assessed $2,500 in sanctions against Dyse. Dyse now appeals, asserting the trial court erred by (1) granting summary judgment in favor of BKS; (2) applying the incorrect legal standard in granting summary judgment; and (3) assessing sanctions against her. As we find genuine issues of material fact remain in dispute as to her claim, we reverse the trial court’s grant of summary judgment, and remand this case for reinstatement on the trial court’s docket. We reverse and render the award of sanctions.
DISCUSSION
I. SUMMARY JUDGMENT
¶4. When reviewing the trial court’s grant or denial of a motion for summary judgment, this Court conducts a de novo review and “examines all the evidentiary matters ... — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.” City of Jackson v. Sutton, 797 So.2d 977, 979 (¶ 7) (Miss.2001). “The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to [a] judgment as a matter of law.” Karpinsky v. Am. Nat. Ins. Co., 109 So.3d 84, 88 (¶ 11) (Miss.2013). “[Sjummary judgment is appropriate when the non[ jmoving party has failed to make a showing sufficient to establish the existence of an element essential to the party’s case, and on which that party will bear the burden of proof at trial.” Id. at 89 (¶ 11) (quotation marks omitted).
¶ 5. The basic elements that Dyse must prove to prevail on her negligence action are: “(1) a duty owed by [BKS] to [her]; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach and the damages, such that the breach is the proximate cause of the damages.” Double Quick, Inc. v. Lymas, 50 So.3d 292, 298 (¶30) (Miss.2010) (quoting Grisham v. John Q. Long V.F.W. Post, No. 4.057, Inc., 519 So.2d 413, 416 (Miss.1988)). As Dyse was a business invitee — that is, one who entered the premises “in answer to the express or implied invitation of the owner or occupant for their mutual advantage” — BKS owed Dyse a duty “to keep the premises reasonably safe” or, at least, to warn of any “hidden danger or peril that [was] not in plain and open view.” Rod v. Home Depot USA, Inc., 931 So.2d 692, 694 (¶ 10) (Miss.Ct.App.2006). “[I]n a premises liability case, merely proving that an accident occurred is not sufficient to establish liability.” Day v. Ocean Springs Hosp. Sys., 923 So.2d 246, 250 (¶ 13) (Miss.Ct.App.2006). Rather, to establish liability, Dyse must show “(1) a negligent act by [BKS] caused [her] injury; or, (2) that [BKS] had actual knowledge of a dangerous condition, but failed to warn [her] of the danger; or, (3) the dangerous condition remained long enough to impute constructive knowledge to [BKS].” Byrne v. Wal-Mart Stores, Inc., 877 So.2d 462, 465 (¶ 5) (Miss.Ct.App.2003) (citing Downs v. Choo, 656 So.2d 84, 86 (Miss.1995)).
¶ 6. The basis of BKS’s summary-judgment motion was that Dyse had failed to present evidence of injury or damages.[1] *169 BKS asserts that Dyse offered “no proof of anything other than inconvenience,” and that the medical treatment Dyse sought after the incident was “absolutely unnecessary” and “an overreaction.” BKS bases its arguments on Dyse’s deposition testimony and the deposition testimonies of two physicians: Dr. John David Bullock, Dyse’s treating physician; and Dr. Steven Stogner, BKS’s expert witness.
¶ 7. Dyse testified that after she was sprayed with gasoline,, she experienced a burning sensation in and around her eyes, nose, mouth, and throat, and could not stop coughing. Upon arrival at the emergency room, her eyes were flushed with a saline solution, a chest x-ray was taken, and a breathing treatment was administered. She was not given any specific instructions regarding her injuries when she was discharged, but, according to the emergency-room records, she was advised to “follow up with [her] family doctor.” Dyse went for three follow-up visits with her family doctor, Dr. Bullock, who treated her complaints of a burning sensation in her eyes, nose, mouth, and throat; anxiety; and chest pain. Dyse also saw an eye doctor because of the burning sensation in her eyes. The eye doctor found no damage to her eyes, but gave her an ointment and eye drops, which she used for “a couple of weeks” while her eyes continued to burn. Dyse admitted in her deposition that she suffered no permanent, serious, or disabling injuries as a result of the gasoline exposure. Regarding the effect of her continued anxiety from the incident, she stated that she becomes “nervous” when pumping gas.
¶ 8. Dr. Bullock testified that he saw Dyse on December 15, 2009; January 4, 2010; and January 28, 2010, for treatment related to her gasoline exposure. Dr. Bullock stated that when he initially examined Dyse on December 15, 2009, she had a low-grade temperature, which possibly could have been caused by “a little pulmonary pneumonitis from a little aspiration” of gasoline droplets or fumes. Dyse’s chest x-ray taken that day showed “[increased interstitial markings,” or inflammation, and Dr. Bullock “thought she had a little atelectasis,” or improper lung functioning, caused by the inhalation of gas. He prescribed Augmentin for any possible infection, Poly-Tussin for cough, and Prilosec for reflux. On January 4, 2010, Dyse returned to Dr. Bullock, complaining of chest pain, nerve issues, and anxiety. Dr. Bullock’s notes from that visit state: “[Dyse] appears anxious. She is rocking back and forth and has an anxious affect.” He prescribed the anti-anxiety medications Zoloft and Klonopin. Dr. Bullock testified that he could not say if the gasoline exposure was the sole cause of her anxiety, as he did not question her as to other stresses in her life. On January 28, 2010, Dyse again returned to Dr. Bullock with complaints of chest pain, nerve issues, and anxiety. His diagnoses were anxiety, hyperthyroidism, and cough. Dr. Bullock made clear that Dyse did not suffer any serious, disabling, or permanent injuries due to the incident. *170 In Dr. Bullock’s opinion, the cough was caused by the gasoline exposure, but the symptoms were “a self-limited episode,” meaning the gasoline exposure had not “caused any long-term issues.” Also, Dr. Bullock found that Dyse’s anxiety and chest pain were a “temporary irritation” of ongoing issues, since Dyse had a history of anxiety and chest pain. Regarding the overall effects of the gasoline exposure, Dr. Bullock stated:
[W]ith this incident, her anxiety was exacerbated during that time frame of a few weeks — after the incident. And indeed when she saw me, I believe it was the 28th, I think that most of whatever physical issues she had had with that had probably resolved, and that most of what she was there seeing me for was anxiety related. So, yeah, I think the incident did exacerbate her anxiety over the short term, and by that I mean a few weeks or maybe even a couple of months. But that was kind of the extent of it in my opinion.
¶ 9. Dr. Stogner, BKS’s expert, reviewed Dyse’s deposition and the medical records submitted in discovery, and was prepared to testify that Dyse suffered “only a very temporary irritation” due to the gasoline exposure, and her other complaints — chest pain, nerve issues, and anxiety — “would not be the type of significantly traumatic event expected to precipitate such complaints .... ” He added that “the medical probability of these complaints being really related to the brief incident on December 13, 2009, [was] medically improbable, if not unfathomable.” Further, Dr. Stogner opined that the chest x-rays “demonstrated nothing of clinical significance; in fact, it would be extremely, medically doubtful that brief inhalation (if it occurred) of gasoline fumes would cause any form of permanent injury.” He noted that while the chest x-rays did show interstitial markings on Dyse’s lungs, these markings “absolutely pre-existed the events complained of, and possibly [were] associated with her prior exposure to asbestos in the work environment for which she ha[d] previously made claims.”[2] In summary, Dr. Stog-ner found that although Dr. Bullock’s treatment was appropriate given Dyse’s complaints, “there was no ... justification for her complaints of chest pain on January 4, 2010, associated with the event three weeks earlier, or for that matter, the subsequent "visit on January 28, 2010, with complaints of anxiety associated with this event.”
¶ 10. After reviewing the evidence, the trial court granted BKS summary judgment, stating:
The Court finds that this lawsuit has no merit. And as long as I’m in this position, I’m going to do my best not to waste the Courtf’s] and the people’s time and money allowing these kinds of cases to go this far, for lack of a better term.
We disagree with the trial court’s finding that this is a meritless case. Our rules state that to survive summary judgment, Dyse must “produc[e] sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial.” Karpinsky, 109 So.3d at 89 (¶ 13). The medical testimony presented sufficient evidence that Dyse may have suffered some damage, even if it was short-term. The extent of the damages and the question of whether the medical treatment was necessary or even related to the gasoline exposure were in dispute. This dispute created a genuine issue of material fact as to Dyse’s damages. Notably, the dispute *171 was addressed by the trial court prior to its ruling:
There seems to be a serious disagreement as to the facts. Somebody misrepresented to the Court, surely unintentionally, the following: On the one hand the defendant says that there w[ere] no damages, there was no medical reaction by the plaintiff. But the plaintiff says that there was gasoline exposure, irritation noticed at the emergency room, pulmonary pneumonitis, I believe he [ (Dr. Bullock) ] said, and skin irritation and throat [irritation].
¶ 11. Rather than basing its ruling on the existence or nonexistence of a genuine issue of material fact, it appears the trial court may have granted summary judgment partially because of Dyse’s overstatement of her injuries in her complaint. Dyse’s complaint alleged:
As a direct and proximate result of this incident, Plaintiff, Marion Dyse, sustained serious injuries to her eyes, lungs, mouth and other parts of her body, mind and psyche; medical expenses, past and future[;] loss of income and/or earning capacity, past and future[;] and related expenses, all to [her] detriment, in the amount of [$250,000].
While Dyse requested $250,000 in damages, she only presented $1,064 in medical bills. And although she claimed to have suffered a loss of income and/or wage-earning capacity, her deposition revealed she had not been employed in the past ten years. It is evident that Dyse has grossly overstated her claim for damages. In her appellate brief, Dyse admits that “her injuries subsequently were shown to be less severe than she ... had ‘unintentionally’ asserted in her initial [c]omplaint.” Regardless, this is not the standard for the grant or denial of summary judgment. Rather, we must examine the record to determine whether a genuine issue of material fact is in dispute such that a triable jury issue exists. In this case, we find that disputed issues of material fact exist regarding Dyse’s injuries such that summary judgment was not appropriate. While the injuries sustained may not have been as serious as alleged in the complaint, that does not negate the issue of whether Dyse suffered damages. Therefore, we reverse the grant of summary judgment and remand this case for reinstatement on the trial court’s docket.
II. SANCTIONS
¶ 12. “Under [Mississippi Rule of Civil Procedure] 11(b), the court may award reasonable expenses and attorney’s fees against a party or his attorney, or both, whose pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay.” Eatman v. City of Moss Point, 809 So.2d 591, 593 (¶ 6) (Miss.2000). A pleading is frivolous when the pleader “has no hope of success.” Id. “When a party espouses a viable legal theory, [Rule] 11 sanctions are inappropriate.” Brown v. Hartford Ins. Co., 606 So.2d 122, 127 (Miss.1992). The assessment of sanctions is reviewed for abuse of discretion. Eatman, 809 So.2d at 593 (¶ 6).
¶ 13. As we find that Dyse’s complaint presented a viable legal theory, we accordingly find the award of sanctions was inappropriate. We find the trial court abused its discretion in sua sponte assessing $2,500 in sanctions against Dyse; thus, we reverse and render the award of sanctions.
¶ 14. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; THE AWARD OF $2,500 IN SANCTIONS IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
*172 IRVING AND GRIFFIS, P JJ., ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES AND ISHEE, JJ.; CARLTON, J. JOINS IN PART.

. Although BKS briefly stated in its summary-judgment motion that Dyse “has offered no proof that [BKS] has breached a duty to her,” this argument was not discussed further, and it is not mentioned on appeal. To demonstrate BKS breached its duty to her as a business invitee, Dyse must prove either that (1) BKS was negligent in keeping its premises reasonably safe, and this caused her injury; (2) BKS knew the pump hose was leaking and *169 causing a dangerous condition, but failed to warn her; or (3) the leaking pump hose was a dangerous condition and had been leaking for long enough to impute constructive knowledge to BKS. No information regarding these elements appears in the record. Although Dyse’s deposition mentions the deposition of a gas-station clerk, this deposition is not in the record before this Court. It is unclear why this issue was not addressed below, unless BKS has conceded this issue or just chose to base its summary-judgment motion on the lack of evidence of damages. Regardless, the trial court’s order was based solely on the lack of evidence of damages. Since damages is the only issue presented on appeal, we will not discuss whether Dyse has presented a genuine issue of material fact regarding duty, breach, or causation.

. In her deposition, Dyse stated that she was a plaintiff in an asbestos-related claim against a garment factory where she worked in the early 1970s.